**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

EUGENE A. BOWLING, JR.,

                                    Plaintiff,

                  - v -                                              Civ. No. 9:18-CV-597
                                                                         (GTS/DJS)

JAMISON, SGT., *et al.*,

                                    Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

EUGENE A. BOWLING, JR.
Plaintiff, *Pro Se*
249 Greenfield Ave.
Apt. 1
Ballston Spa, New York 12020

JOHNSON & LAWS, LLC                      APRIL J. LAWS, ESQ.
Attorney for Defendants
648 Plank Road, Suite 204
Clifton Park, New York 12065

**DANIEL J. STEWART
United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. INTRODUCTION

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging the violation of his constitutional rights concerning events that took place while Plaintiff was incarcerated in the Washington County Correctional Facility ("WCCF"). Dkt. No. 1, Compl. The Complaint was initially reviewed by Chief District Court Judge Glenn T. Suddaby pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Dkt. No. 6. Following that review, the only claim that remains in this action is a Fourteenth Amendment excessive force claim. *Id.* at p. 13. Presently before

this Court is Defendants' Motion for Summary Judgment. Dkt. No. 27. Defendants seek summary judgment based on Plaintiff's failure to exhaust administrative remedies, on the merits of Plaintiff's excessive force claim, and based on qualified immunity. Dkt. No. 27-18, Defs.' Mem of Law. Plaintiff opposes the Motion. Dkt. No. 36, Pl.'s Opp.[1]

For the reasons that follow, the Court recommends that the Motion be denied.

## II. FACTUAL BACKGROUND

On November 9, 2017, Plaintiff was incarcerated at the WCCF when Defendants Jamieson and Gebo approached his cell and ordered him to leave for purposes of conducting a search of the cell. Dkt. No. 27-7, Jamieson Aff. at ¶ 5; Dkt. No. 27-10, Gebo Aff. at ¶ 4; Pl.'s Opp. at pp. 8-9. Plaintiff admits that he refused three orders to leave his cell. Pl.'s Opp. at p. 9. After a matter of just a few seconds, Defendant Jamieson "grabbed ahold of Inmate Bowling's shirt to pull him out of his cell." Jamieson Aff. at ¶ 5; Dkt. No. 27-3.[2] In doing so Jamieson pulled Plaintiff across a hallway and into a gated area. Dkt. No. 27-3. A struggle then ensued and numerous other officers responded to the scene. Jamieson Aff. at ¶ 5; Gebo Aff. at ¶ 4; Dkt. No. 27-3. Plaintiff alleges that during this time he was not resisting, but that Defendants continued to yell at him to stop resisting and that unnecessary force was used while multiple officers piled on top of him. Pl.'s Opp. at pp. 9-10. Plaintiff was subdued a short time later and escorted away out of sight of the video. *See* Dkt. No. 27-9, Tripp Aff. at ¶¶ 4-7; Dkt.

---

[1] Plaintiff's opposition includes a response to Defendants' 7.1 Statement, exhibits, and a Memorandum of Law. It is docketed as one document and references to it throughout this opinion shall be to the page numbers generated by the Court's CM/ECF system.

[2] Dkt. No. 27-3 is a DVD of video surveillance footage that shows the events which took place outside of Plaintiff's cell.

2

No. 27-3. Plaintiff then claims that he was taken to the medical unit and assaulted again by Defendants VanArnum and Tripp. Pl.'s Opp. at p. 11. Defendants deny this allegation. Tripp Aff. at ¶ 8; Dkt. No. 27-8, VanArnum Aff. at ¶ 7.

Plaintiff claims that he filed several facility grievances regarding this alleged assault. Dkt. No. 1-1; Pl.'s Opp. at pp. 7, 15, & 17. Defendants deny this allegation. VanArnum Aff. at ¶ 5. In January 2018, however, after receiving a letter from Plaintiff recounting the alleged assault, an investigation was conducted that found Plaintiff's claim unsubstantiated. Dkt. No. 27-6, McKenna Aff. at ¶¶ 8-10.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific

3

and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. ANALYSIS OF DEFENDANTS' SUMMARY JUDGMENT MOTION

#### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

4

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The evidence establishes that the WCCF process involves a three-step process for the filing of grievances and potential appeals. VanArnum Aff. at ¶ 4; Dkt. No. 37-1. The record before the Court raises factual questions that cannot be resolved on this Motion. There is a clear

5

dispute of fact as to whether Plaintiff filed a grievance. Plaintiff clearly asserts that he did, Pl.'s Opp. at pp. 7, 15, & 17; Dkt. No. 1-1 (copy of the grievance purportedly filed by Plaintiff), while Defendant VanArnum denies any record of such a grievance. VanArnum Aff. at ¶ 5. Defendants claim that the grievance attached to the Complaint was "authored after Plaintiff left the custody of the WCCF." Dkt. No. 37-3, Defs.' Reply Mem. of Law at p. 4. That directly contradicts Plaintiff's prior sworn testimony at his 50-h hearing that the grievance was filed while he was at WCCF. Dkt. No. 27-5. The Court recognizes that an inmate's mere claim that he filed a grievance might be insufficient to defeat summary judgment. *Gough v. Morris*, 2018 WL 7199494, at *4 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019). Here, however, the record also establishes that Defendants eventually received a letter from Plaintiff complaining of the alleged excessive force which Defendants then investigated. McKenna Aff. at ¶¶ 8-10. Defendants have not explained why this was not treated as a grievance regarding Plaintiff's claims.[3] There are, therefore, factual questions as to whether Plaintiff filed a grievance here at all.

Even if the Court were to conclude that Plaintiff had failed to raise a factual question about whether he had filed a grievance, the Court recommends finding that questions of fact exist as to whether the grievance procedure was truly available to Plaintiff on the facts presented. First, while state law requires "that each grievance [be] investigated to the fullest extent necessary by an impartial person who was not personally involved in the circumstances giving rise to the grievance," 9 N.Y.C.R.R. § 7032.4(f), it is unclear here how the WCCF grievance policy

---

[3] Defendants also argue in very forceful terms that this and other grievances have been "fabricated" after the fact to defeat summary judgment. Defs.' Reply Mem. of Law at p. 4 & n. 6. Making this argument, however, only highlights the factual dispute they ask the Court to resolve on summary judgment.

6

addresses a situation such as this where the grievance is lodged against VanArnum who served as the grievance officer. *See* Dkt. No. 1-1 (naming VanArnum in allegedly filed grievance). The grievance policy itself does not speak to this situation. Dkt. No. 37-1 at pp. 4-5. Defendant VanArnum stated that he would not have investigated such a grievance. VanArnumAff. at ¶ 4. But the two individuals Plaintiff testified to having discussed the status of his grievance with, Officers Strain and Freebern, Dkt. No. 27-5 at p. 65, both affirm that while they do not recall such conversations with Plaintiff, if they had occurred, they would have referred him to VanArnum. Dkt. No. 27-11, Freebern Aff. at ¶ 3; Dkt. No. 27-15, Strain Aff. at ¶ 3. The record is thus not clear as to whether WCCF had a policy in place for handling a grievance of this sort.

Second, there was a very short interval between this incident and Plaintiff's transfer to state custody - roughly 19 days. *See* McKenna Aff. at ¶ 9 (noting Plaintiff left WCCF for state custody on November 28, 2017). It is not clear how the WCCF grievance policy provided for handling grievances under the circumstances of such a short timeframe and if and how Plaintiff's transfer out of WCCF may have impacted the grievance process. *Cf. Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016) (discussing the impact of a transfer between facilities on whether grievance program was "available" to inmate); 9 N.Y.C.R.R. § 7032.7 (requiring grievance process to continue after inmate is transferred out of facility).

Third, Defendants point to Plaintiff's failure to file any appeal to the State Commission on Corrections upon not receiving a response to the grievance he allegedly filed as evidence that he did not exhaust his available remedies. Defs.' Reply Mem. of Law at p. 5. WCCF's grievance policy, however, does not advise inmates that they can, or must, appeal to the State Commission on Corrections if they receive no response at the facility. Dkt. No. 37-1. It instead

7

appears to suggest that such an appeal could be taken only after receiving a decision on an appeal from the Jail Administrator. *Id.* The applicable state regulation appears to reflect a similar rule. 9 N.Y.C.R.R. § 7032.5. This case presents a similar situation to that confronting the Second Circuit in *Williams v. Priatno. Williams*, a case arising under the much more detailed New York State Department of Corrections and Community Supervision inmate grievance regulations, "holds that the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that *no* inmate could actually make use of it." *Berman v. Durkin*, 2017 WL 1215814, at \*8 (N.D.N.Y. Mar. 10, 2017) (emphasis in original), *report and recommendation adopted by* 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017). Here, especially given the short time he remained at WCCF, it may be that the process for addressing the failure to receive a response to the grievance he claims he filed may have been so opaque as to render the grievance process functionally unavailable to Plaintiff.

Given this procedural posture,[4] the Court recommends denying Defendants' Motion for Summary Judgment. The Court further recommends that an evidentiary hearing regarding the exhaustion question be held. *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011); *Curtis v. Bola*, 2016 WL 7735755, at \*10 (N.D.N.Y. Nov. 1, 2016), *report and recommendation adopted*, 2017 WL 120945 (N.D.N.Y. Jan. 12, 2017).[5]

---

[4] Defendants bear the burden of establishing the existence of a grievance process and its procedure. *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Defendants did not provide a copy of the grievance policy itself until submitting their reply papers, Dkt. No. 37-1, thus depriving Plaintiff of the opportunity to address any particular issues he may have been able to raise regarding the policy.

[5] Defendants also argue that summary judgment is appropriate because Plaintiff did not plead his compliance with the PLRA. Defs.' Reply Mem. of Law at p. 5. However, "[b]ecause failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement." *Abreu v. Donahue*, 2018 WL 7202489, at \*6 (N.D.N.Y. Oct. 4, 2018), *report and recommendation adopted*, 2019 WL 452491 (N.D.N.Y. Feb. 5, 2019).

## B. Plaintiff's Excessive Force Claim

Plaintiff's sole remaining claim is a Fourteenth Amendment excessive force claim. Dkt. No. 6 at pp. 5-6 & 13. In *Kingsley v. Hendrickson*, the Supreme Court addressed the proper standard for evaluating excessive force claims brought under the Fourteenth Amendment and concluded that "courts must use an objective standard" under which the plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." 135 S. Ct. 2466, 2472-73 (2015). Assessing the objective reasonableness of any use of force necessarily depends on the facts and circumstances of each case, but relevant factors include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S. Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Plaintiff can establish a claim by showing that the force used was "not rationally related to a legitimate governmental purpose or that it is excessive in relation to that purpose.'" *Parson v. Barboza*, 2016 WL 7261550, at *5 (N.D.N.Y. June 28, 2016), *report and recommendation adopted*, 2016 WL 4398522 (N.D.N.Y. Aug. 18, 2016) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. at 2473).

Having reviewed the evidence presented on this Motion, the Court concludes that questions of fact exist which preclude summary judgment. The key question to be decided regarding Plaintiff's claim is whether Defendants acted reasonably in using force on November 9th. *Kingsley v. Hendrickson*, 135 S. Ct. at 2472-73. "Reasonableness is generally a question of fact." *Kaminski v. City of Utica*, 2012 WL 4486074, at *22 (N.D.N.Y. June 28, 2012), *report*

9

*and recommendation adopted*, 2012 WL 4486071 (N.D.N.Y. Sept. 27, 2012); *see also Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 306 (D. Conn. 2009) ("reasonableness is traditionally a question of fact for the jury").  Here, the parties offer vastly different versions of events and even though there is a video of at least some of the events that took place, it does not offer a definitive picture of what occurred.

Plaintiff contends that Defendants used excessive force during the encounter on November 9th.  Pl.'s Opp. at p. 9.  He claims that Defendants falsely asserted that Plaintiff was resisting their efforts to gain control as a basis to continue striking him when he was not, in fact, resisting.  *Id.*  Plaintiff concedes that he was not compliant with directions to come out of his cell and that he turned toward the officers.  *Id.*  Plaintiff claims that the assault continued after he was removed from the cell block, including an assault in the shower area.  *Id.* at p. 11.

The affidavits offered in support of the Motion paint a very different picture.  Defendants Jamieson and Gebo assert that only the force necessary to control an aggressive inmate was used during this encounter and deny using excessive force.  Jamieson Aff. at ¶¶ 5-6; Gebo Aff. at ¶¶ 4-5.  Defendants Tripp and VanArnum similarly deny using any inappropriate force.  VanArnum Aff. at ¶¶ 7-8; Tripp Aff. at ¶¶ 8-9.  This dispute of fact presents quintessential fact questions that cannot be resolved on summary judgment.

Defendants also rely heavily on video footage from the housing unit which they contend demonstrates the reasonableness of Defendants in dealing with Plaintiff "who was defiant and the aggressor." Defs.' Mem. of Law at p. 1.  There is no question that a jury viewing the incident depicted on the video *might* well conclude that Defendants acted reasonably.  The video, however, is consistent with at least some aspects of Plaintiff's version of events.  While

10

it clear that Plaintiff is not fully cooperative with Defendants' instructions, it also appears clear that Defendants aggressively pull Plaintiff from his cell without any outward sign of physical aggression by Plaintiff. Dkt. No. 27-3. Plaintiff then admittedly makes a turn toward Defendants that they may have viewed as aggressive. Numerous other officers then arrive and subdue Plaintiff. Exactly what occurred in that scrum is not clear. Plaintiff is then escorted out of view of the camera where he allegedly was assaulted in the shower area. Even though the video certainly supports some portions of Defendants' defense, it does not provide a "definitive answer" as to the reasonableness of the use of force. *Martin v. Cty. of Onondaga*, 2019 WL 1100157, at *5 (N.D.N.Y. Mar. 8, 2019); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017) ("in the ordinary case, the appropriate course of action is still to permit the jury an opportunity to resolve the competing versions of events, in conjunction with the video, through the ordinary fact-finding processes in which juries engage") (internal quotation omitted).

Defendants also make much of the fact that Plaintiff's version of events are inconsistent with facility medical records. Defs.' Reply Mem. of Law at p. 6. The Court notes, however, that in cases involving Eighth Amendment excessive force claims, courts do not require, in every instance, "that injuries caused by the alleged use of excessive force be corroborated by medical records." *Berman v. Durkin*, 2017 WL 1215814, at *10 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017) (citing *Ninortey v. Shova*, 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008) ); *see also McClemore v. Bosco*, 2018 WL 1193308, at *23 (N.D.N.Y. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 1183384 (N.D.N.Y. Mar. 6, 2018) (recognizing "the well-established principle that the absence of any serious injury from an alleged assault by prison personnel, while relevant, does not

11

necessarily negate a finding that force has been applied wantonly and maliciously."). As the Supreme Court has expressly noted "[i]njury and force [ ] are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Defendants offer no basis for concluding that a higher standard would apply to this claim.

In sum, "if Plaintiff's account is believed to be more credible, then it would not be unreasonable for a jury to find that" the use of force was unreasonable, while "if the Defendants' story is found to be more credible, than a reasonable juror could determine that the use of force by Defendants . . . was made in a good faith effort to maintain order over a special housing unit prisoner, who was out of his cell, acting aggressively, and violating a direct order." *Cannon v. Wood*, 2013 WL 838299, at *9 (N.D.N.Y. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 838294 (N.D.N.Y. Mar. 6, 2013). That credibility decision cannot be made on this Motion.[6]

Accordingly, the Court recommends that the Motion for Summary Judgment be denied.

## V. APPOINTMENT OF COUNSEL

Also pending before this Court is Plaintiff's Motion for Appointment of Counsel. Dkt. No. 31. In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should determine whether the indigent's position seems

---

[6] The same questions of fact that preclude summary judgment on the merits of the excessive force claim preclude summary judgment on the basis of qualified immunity.

likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control Corp. v. Horowitz*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Prior to evaluating a request for appointment of counsel on the merits, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge v. Police Officers*, 802 F.2d at 61). Plaintiff's Motion suggests that he has attempted to contact counsel about potentially representing him. Dkt. No. 31. The Court will thus consider the merits of Plaintiff's Motion.

At the current time, Plaintiff fails to demonstrate his entitlement to appointment of counsel. Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, as noted, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d at 61). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995).

Given the recommendations made here, the Court presumes for purposes of this Motion that the case may be of substance. A review of the file in this matter reveals that the issues in dispute are not overly complex. It appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action, including the filing of a lengthy response to Defendants' Motion for Summary Judgment. *See* Dkt. No. 36.

While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. at 974. This Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted.

Denial of this Motion is without prejudice. Should the District Court either direct that an exhaustion hearing be held or schedule the matter for trial, it would likely be appropriate at that time to appoint counsel for Plaintiff.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 27) be **DENIED**; and it is further

**RECOMMENDED**, that an exhaustion hearing be held as to Defendants' exhaustion defense; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel is **DENIED**; and it is

further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: February 13, 2020
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).