UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EUGENE A. BOWLING, JR.,

                                Plaintiff,

v.                                                                    9:18-CV-0597
                                                                      (GTS/DJS)
ALBERT B. NOLETTE, Washington County
Treasurer, as Administrator of the Estate of David
G. Jamieson; TERRY VANARNUM, Sergeant,
Washington County Jail; BRIAN TRIPP, Officer,
Washington County Jail; and TIMOTHY GEBO,
Officer, Washington County Jail,

                                Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICE OF PATRICK SORSBY            PATRICK SORSBY, ESQ.
  Counsel for Plaintiff
1568 Central Avenue, 1st Floor
Albany, NY 12205

JOHNSON LAWS, LLC                              APRIL J. LAWS, ESQ.
  Counsel for Defendants                          COREY A. RUGGIERO, ESQ.
646 Plank Road, Suite 205                         GREGG T. JOHNSON, ESQ.
Clifton Park, NY 12065                             LORAINE CLARE JELINEK, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Eugene A. Bowling, Jr.

("Plaintiff") against Albert B. Nolette (as Administrator for the Estate of David G. Jamieson),

Sergeant Terry VanArnum, Officer Brian Tripp, and Officer Timothy Gebo ("Defendants"), is

the question of whether, before he filed this action, Plaintiff exhausted his administrative

remedies under the Prison Litigation Reform Act ("PRLA"), which was raised as an affirmative

defense by Defendants in their Answer and in their prior motion for summary judgment. (Dkt.

Nos. 14, 27.)  Also currently before the Court are the following two motions: (1) Plaintiff's

motion to admit, as part of the evidence presented at the exhaustion hearing, portions of the transcript from his Section 50-h examination pursuant to Fed. R. Evid. 804(b)(1); and (2) Defendants' motion to dismiss Plaintiff's Complaint for lack of prosecution.  (Dkt. Nos. 77, 78.) For the reasons set forth below, Plaintiff's Complaint is dismissed for failure to exhaust his administrative remedies, his motion is denied, and Defendants' motion is denied as moot.

I.    **RELEVANT BACKGROUND**

    A.    **Parties' Pre-Hearing Briefing on Exhaustion**

        1.    **Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing this action despite the fact that the grievance process was available to him.  (Dkt. No. 27, Attach. 18, at 18-21 [Defs.' Mem. of Law].)  Specifically, Defendants argue as follows: (a) there is a comprehensive grievance process at the Washington County Correctional Facility, Plaintiff acknowledged that he was aware of that process, and there is no evidence that the grievance process was unavailable to him; (b) Defendants have not forfeited exhaustion as an affirmative defense because they raised it in their Answer and there is no evidence that Defendants took any actions to inhibit Plaintiff's exhaustion of his administrative remedies; (c) there are no special circumstances to justify Plaintiff's failure to exhaust, because even if he filed a grievance (which Defendants dispute), he failed to follow-up with the New York State Commission of Corrections ("NYSCC") to ascertain the outcome of that alleged grievance; and (d) a general claim that a grievance was lost or destroyed does not excuse a failure to exhaust.  (*Id.*)

        2.    **Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff argues that Defendants thwarted his attempts to file a grievance and therefore rendered the grievance system unavailable to him, because he attempted to file grievances on two separate occasions related to the incident but Defendant VanArnum "made sure that the grievance was not filed due to his machinations and manipulating the system." (Dkt. No. 36, at 42-45 [Pl.'s Opp'n Mem. of Law].)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants argue that (a) Plaintiff was familiar with the grievance process and that process was available to him, (b) there is no evidence to support a finding that Defendants forfeited their exhaustion defense, and (c) Plaintiff has not offered any excuse or special circumstance to justify his failure to contact NYSCC when he received no response to his grievance.  (Dkt. No. 37, Attach. 3, at 7-8 [Defs.' Reply Mem. of Law].)

### B.     Report-Recommendation of February 13, 2020

In the report-recommendation, United States Magistrate Judge Daniel J. Stewart recommended, in pertinent part, that the Court hold an exhaustion hearing due to multiple remaining questions of fact related to whether Plaintiff had exhausted his administrative remedies.  (Dkt. No. 39, at 4-8 [Report-Recommendation filed Feb. 13, 2020].)  Specifically, Magistrate Judge Stewart found as follows: (a) there is a dispute as to whether Plaintiff filed a grievance; (b) Defendants have not explained why they failed to treat a letter from Plaintiff complaining of excessive force (which Defendants ultimately investigated) as a grievance; and (c) there is a question of fact as to whether the grievance process was truly available to Plaintiff because (i) it is unclear how the relevant grievance policy addresses a situation in which the grievance is against the person who serves as the grievance officer (as happened here), (ii) it is

unclear from the grievance policy how Plaintiff's transfer to state custody approximately 19 days after the incident would impact the grievance process, and (iii) it is unclear whether Plaintiff would have been able to know that he should contact NYSCC given that the grievance policy does not advise inmates to do so if they do not receive a response.  (*Id.*)

On March 17, 2020, the undersigned adopted the report-recommendation in whole, with the exception of the portion that recommended denying summary judgment on Plaintiff's excessive force claim against Defendant VanArnum arising out of the incident outside of Plaintiff's cell (which the Court rejected).  (Dkt. No. 44, at 11 [Decision and Order filed Mar. 17, 2020].)  The Court therefore granted summary judgment on that claim and dismissed that claim, but otherwise adopted the Report-Recommendation.  (*Id.*)  On July 12, 2021, the Court scheduled an exhaustion hearing as recommended in the Report-Recommendation.  (Text Order filed July 12, 2021.)

### C.    Exhaustion Hearing Held on July 29, 2021

On July 29, 2021, the Court held an exhaustion hearing at which the following four witnesses testified: (1) Officer Aaron Beaudett; (2) Sergeant Terry VanArnum; (3) Officer Michael Minor; and (4) Captain Eugene McKenna.  Plaintiff did not appear at the hearing, but was represented by counsel.  During the hearing, the Court instructed the parties to file supplemental briefing on (a) whether Plaintiff's claims should be dismissed for failure to prosecute, and (b) whether the transcript from Plaintiff's Section 50-h examination is admissible under the exceptions for hearsay evidence due to his absence from the exhaustion hearing.

### D.    Plaintiff's Motion to Admit the Section 50-h Examination Transcript

#### 1.    Plaintiff's Supplemental Letter-Brief

In his supplemental letter-brief, Plaintiff argues that a portion of his Section 50-h examination is admissible under Fed. R. Evid. 804(b)(1) for the purposes of determining whether he exhausted his administrative remedies.  (Dkt. No. 78 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues as follows: (a) he was unavailable to testify at the exhaustion hearing because he either could not be located or he was at the hospital receiving medical care; (b) Defendants had as much of an opportunity and motive to develop the testimony at the Section 50-h examination as they would have at the exhaustion hearing because that examination was conducted by the same counsel who represented the same Defendants regarding to the same incident and claims, and the Section 50-h examination even included discussion of whether Plaintiff had filed a grievance as to the issues giving rise to this action.  (*Id.*)

## 2.     Defendants' Supplemental Letter-Brief

Generally, in their supplemental letter-brief, Defendants make three arguments: (1) Plaintiff's supplemental brief violates Local Rule 7.1 in that it does not contain a notice of motion or supporting affidavit and therefore should not be considered; (2) Plaintiff has not and cannot show that he was unavailable as a witness for the purposes of Fed. R. Evid. 804(a) because he has not provided any evidence or affidavit to support that diligent but fruitless efforts were undertaken to secure his attendance at the hearing and because it appears that he simply chose not to attend the hearing; (3) the documents that Plaintiff seeks to admit do not satisfy the exception to hearsay in Fed. R. Evid. 804(b)(1) because (a) Section 50-h examinations have been treated differently than depositions based on the fact that Section 50-h examinations are investigative as opposed to adversarial in nature, and (b) Defendants did not have sufficient knowledge of what Plaintiff was claiming at the time of that examination to fully question him about his alleged grievance; and (4) Defendants would suffer significant prejudice if Plaintiff

were permitted to introduce this evidence given the fact that they have not had the opportunity to cross-examine him on this issue in any meaningful way.  (Dkt. No. 79 [Defs.' Opp'n Mem. of Law].)  Finally, Defendants argue that, should the Court grant Plaintiff permission to file any portion of the Section 50-h examination transcript, they should be permitted to admit into evidence a separate excerpt of the same examination under Fed. R. Evid. 106, specifically pages which indicate that, while Plaintiff was on suicide watch from November 9 to November 13, 2017, he did not speak to any officers or do anything.  (*Id.*)

### E. Defendants' Motion to Dismiss for Lack of Prosecution

#### 1. Defendants' Memorandum of Law

Generally, in their motion to dismiss for lack of prosecution, Defendants argue that all of the relevant considerations indicate that dismissal of Plaintiff's Complaint is warranted.  (Dkt. No. 77, Attach. 1, at 8-16 [Defs.' Mem. of Law].)  First, Defendants argue that the first two factors set forth by the Second Circuit (i.e., the duration of the failure to comply, and notice to the non-compliant party that failure to comply could result in dismissal) support dismissal because (a) Plaintiff has failed to engage in any effort to litigate this action for approximately one-and-a-half years (i.e., since he was first notified that an exhaustion hearing would take place), despite being aware that such hearing was scheduled, and has failed to comply with the Court's Orders related to the exhaustion hearing, and (b) the Court has issued multiple Text Notices and Text Orders to Plaintiff informing him of the exhaustion hearing and warning him that his claims would be subject to dismissal if he continued to disregard the Court's Orders.  (*Id.* at 8-11.)

Second, Defendants argue that they are likely to be prejudiced by further delay because Plaintiff's claims have been pending for more than three years, those claims constitute an

ongoing attack on Defendants' integrity and fitness to hold their positions as law enforcement corrections officers, the passage of time affects Defendants' ability to recall facts (or present witnesses who can recall facts) about the incident, and Defendants and their counsel have already expended a significant amount of time and resources on this case.  (*Id.* at 11-14.)

Third, Defendants argue that the balance between the Court's interest in managing its docket and Plaintiff's interest in being provided a fair chance to be heard weighs in favor of dismissal because he has already been provided an extraordinary opportunity to be heard given that (a) the Court allowed the hearing to take place in Albany (rather than Syracuse) for Plaintiff's convenience, (b) the COVID-19 pandemic has resulted in excessive docket congestion, (c) Plaintiff was provided with multiple notices of the hearing, (d) the date of the hearing was changed in an attempt to ensure that he would be present, and (e) Plaintiff's counsel has been granted the opportunity to both submit evidence for potential consideration on the issue of exhaustion in lieu of testimony at the hearing and to submit opposition arguments in response to this motion to dismiss for lack of prosecution.  (*Id.* at 14-15.)

Fourth, Defendants argue that lesser sanctions would not be effective given that Plaintiff has failed to respond to multiple Orders from the Court and has not been communicating with his own counsel or provided any explanation for his actions.  (*Id.* at 16-17.)  Finally, Defendants argue that monetary sanctions would not be effective due to Plaintiff's *in forma pauperis* status. (*Id.*)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff argues that the relevant factors weigh against dismissal of his Complaint for failure to prosecute.  (Dkt. No. 80, at 4-14 [Pl.'s Opp'n Mem. of Law].)  More specifically, Plaintiff argues as follows: (a) Defendants have

failed to show that Plaintiff's presence at the hearing was necessary in that the hearing related to an affirmative defense for which Defendants had the burden to prove and they have not indicated how Plaintiff's absence at the hearing prejudiced their ability to present their defense; (b) Plaintiff was absent either because he was in the hospital or was in custody at the time of the hearing; (c) the delay caused by Plaintiff's failure to comply with Court Orders was not significant because it amounted essentially to at most 17 days between the Order setting the hearing date and the failure to appear at the hearing; (d) there is no indication that Plaintiff failed to comply with orders previous to the events related to the exhaustion hearing; (e) Plaintiff was not on notice that his actions could result in dismissal because counsel was unable to contact him about the Court's Order of July 27, 2021, and it is unclear whether that was a result of Plaintiff being in the hospital or incarcerated; (f) Defendants were not prejudiced by Plaintiff's actions related to the hearing because they did not list him as a witness, the hearing was not delayed as a result of Plaintiff's absence, and there is no evidence to show that any delay was unreasonable; (g) there is no evidence of extreme court congestion to outweigh Plaintiff's interest in an opportunity to be heard; and (h) lesser sanctions would be effective now that Plaintiff's location has been determined and he can be made aware of any such lesser sanctions.  (*Id.*)  Finally, Plaintiff argues that dismissal is a drastic remedy appropriate only in extreme cases.  (*Id.*)

## II.    RELEVANT LEGAL STANDARDS

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516,524-25 (2002).  In this regard, exhaustion serves two main purposes.  First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages the disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.  However, a plaintiff's failure to exhaust does not end the inquiry.  This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175.  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or

whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may

estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."

*Id.* [citations omitted].  Third, if the remedies were available and some of the defendants did not

forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should

consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's

failure to comply with the administrative procedural requirements."  *Id.* [citations and internal

quotations omitted].

      However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong

and effectively enveloped its second prong within its first prong.  *Ross v. Blake*, 136 S. Ct. 1850,

1857 (2016).  More specifically, under *Ross*, any inquiry that previously would have been

considered under the second or third prongs of *Hemphill* is now considered entirely within the

context of whether administrative remedies were actually available to the aggrieved inmate.

*Ross*, 136 S. Ct. at 1858.  This is because, the Supreme Court explained, the PLRA "contains its

own, textual exception to mandatory exhaustion." *Id.*  In particular, 42 U.S.C. § 1997e(a)

provides that only those administrative remedies that "are available" must first be exhausted.  *Id.*

In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is

required to exhaust those, but only those, grievance procedures that are capable of use to obtain

some relief for the action complained of." *Id.* at 1859 (quotation marks omitted).

      To guide courts in this new analysis, the Supreme Court has identified three kinds of

circumstances in which an administrative remedy, "although officially on the books," is not

"available."  *Ross*, 136 S. Ct. at 1859.  First, "an administrative procedure is unavailable when

(despite what regulations or guidance materials may promise) it operates as a simple dead

end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates."

*Id*.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

Finally, two additional points bear mentioning regarding an exhaustion hearing.  First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration.  *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).  Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of proving that a prisoner has failed to exhaust his available administrative remedies.[1]  However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability.[2]  As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

## III.   ANALYSIS

### A.   Whether Testimony from Plaintiff's Section 50-h Examination Is Admissible Under Fed. R. Evid. 804(b)(1)

---

[1]   *Murray v. Palmer*, 03-CV-1010, 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 31, 2010) (Suddaby, J.) (citation omitted).

[2]   *Murray*, 2010 WL 1235591, at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' supplemental letter-brief.  *See, supra*, Part I.D.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

As to whether the Section 50-h testimony meets any of the hearsay exceptions outlined in Fed. R. Evid. 804(b), the Court finds that it does not.  Plaintiff's argument focuses solely on Fed. R. Evid. 804(b)(1), which provides that former testimony is not excluded by the rule against hearsay if the declarant is unavailable as a witness and the former testimony possesses the following two qualities:

> (A) [it] was given as a witness at a trial, hearing, or lawful deposition, whether given in the current proceeding or a different one; and
>
> (B) [it] is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).

Defendants contend that Plaintiff has failed to satisfy any of these requirements.  As to the threshold requirement of whether Plaintiff was unavailable, Fed. R. Evid. 804(a) provides as follows:

> A declarant is considered unavailable as a witness if the declarant:
>
> (1)     is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
>
> (2) refuses to testify about the subject matter despite a court order to do so;
>
> (3) testifies to not remembering the subject matter;

(4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

      (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

      (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Fed. R. Evid. 804(a).

Plaintiff appears to argue that he was unavailable based on either a then-existing illness (i.e., an alleged overdose) or Plaintiff's counsel's inability to procure his attendance by process or other reasonable means. (Dkt. No. 78, at 3-4 [Pl.'s Mem. of Law].) However, in his response to Defendants' motion to dismiss for failure to prosecute, Plaintiff's counsel states that more-recent evidence establishes that Plaintiff was taken into the custody of the Washington County Correctional Facility sometime on July 29, 2021, the date of the exhaustion hearing. (Dkt. No. 80, Attach. 1, at ¶¶ 4-6 [Sorsby Aff.].) Based on the evidence provided, it is unclear whether, at the time of the exhaustion hearing, Plaintiff was unable to be present because of his alleged need for medical care due to his alleged overdose, or because he was in custody for a parole violation. Because no admissible evidence has been presented to establish either a physical or mental illness, Plaintiff must show that his counsel was unable to procure his attendance by process or other reasonable means. As Defendants argue, Plaintiff has failed to provide any admissible evidence regarding what measures counsel made to attempt to secure Plaintiff's attendance at the hearing.

In any event, even assuming that Plaintiff had shown unavailability, he has nonetheless failed to meet the other requirements of Fed. R. Evid. 804(b)(1).  As discussed above, that rule requires both that the former testimony be from "a trial, hearing, or lawful deposition" and that Defendants (or their predecessor-in-interest) had an "opportunity and similar motive" to develop that testimony at the prior proceeding where the former testimony was taken.

Most pertinently, Plaintiff is incorrect that "the [50-h] examination was conducted by counsel for the Defendant[s][,] the same counsel that is representing the Defendants in the case at bar."  (Dkt. No. 78, at 4-5 [Pl.'s Mem. of Law].)  The attached transcript of the Section 50-h examination indicates not only that the examination was conducted by different attorneys from a different law firm than the attorneys and law firm who represented Defendants at the exhaustion hearing, but also that the Section 50-h examination was conducted on behalf of Washington County, not the current Defendants.  (Dkt. No. 78, Attach. 2, at 2-3 [50-h Tr.].)  Because Plaintiff has not proven that any of the Defendants were present at or had their interests represented by counsel at the Section 50-h examination, and because he has not proven (or even argued) that Washington County was a predecessor-in-interest to the individual corrections Defendants, he has not proven that Defendants had an opportunity to develop testimony on any issue at the Section 50-h examination sufficient to enable that testimony to be considered at the exhaustion hearing.  *See GEICO Indemnity Co. v. Dionisio*, 12-CV-1137, 2016 WL 74390, at *6 n.8 (D. Conn. Jan. 6, 2016) (finding that testimony from a different lawsuit was inadmissible hearsay because plaintiff, not being a party to that different lawsuit, had not had an opportunity to examine the witness when that former testimony was provided); *Colon v. Porter*, 09-CV-1006, 2012 WL 3241466, at *2 (N.D.N.Y. Aug. 7, 2012) (D'Agostino, J.) (finding testimony of a disciplinary hearing not admissible under any exception to the hearsay rule because the

defendants themselves were not present and had no opportunity to question the witnesses at that

hearing, and plaintiff failed to show that the hearing officer was defendants' predecessor-in-

interest); *United States v. Carneglia*, 256 F.R.D. 366, 372 (E.D.N.Y. 2009) ("The requirement

that the party had an opportunity to develop it 'is generally satisfied when the defense [was]

given a full and fair opportunity to probe and expose [the] infirmities [of the testimony] through

cross-examination.'") (quoting *United States v. Salim*, 855 F.2d 944, 954 [2d Cir. 1988]).

 Additionally, the Court is not convinced that Plaintiff has proven that, even if

Washington County was Defendants' predecessor-in-interest, it and Defendants had a similar

motive in this case.  The purpose of a Section 50-h examination is for a municipal entity to

assess the general factual circumstances underlying a notice of claim before the claimant ever

files a lawsuit, whereas the purpose of the exhaustion hearing is to elicit specific factual details

about the actions that Plaintiff did or did not take related to filing or pursuing a grievance as to

the underlying alleged constitutional violations in a pending lawsuit.  *See* N.Y. Gen. Mun. L. §

50-h(1) (noting that, "[w]herever a notice of claim is filed against a . . . county . . . , the . . .

county . . . shall have the right to demand an examination of the claimant relative to the

occurrence and extent of the injuries or damages for which claim is made," and that such

examination is conducted before the claimant commences a legal action).  At the Section 50-h

examination, the representative for Washington County asked a few basic questions regarding

the grievance process, namely whether Plaintiff had filed a grievance, when he filed that

grievance, with whom he filed that grievance, and whether he heard about or followed up on the

results of that grievance.  (Dkt. No. 78, Attach. 2, at 62-64, 73-74 [50-h Tr.].)  As Defendants

argue, there is persuasive authority for the point of law that Section 50-h examinations do not

tend to involve a "similar motive" as when taking testimony at a deposition and thus are not

generally admissible under Fed. R. Evid. 804(b)(1).  *See Ricciuti v. New York City Transit Auth.*, 90-CV-2823, 1998 WL 171469, at *4 (S.D.N.Y. Apr. 14, 1998) ("[I]n any event, it cannot be said that at Soto's 50-h examination, Wheeler or a predecessor in interest 'had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.' . . . That is a prerequisite for admissibility under the rule; but a 50-h examination is preliminary and investigatory, without the particular circumstances that drive and inform an adversary proceeding.").  Based on all of the above, the Court finds that Plaintiff has not shown that the proffered Section 50-h examination transcript is admissible under Fed. R. Evid. 804(b)(1).[3]

**B.    Whether Defendants Have Shown that Plaintiff Failed to Exhaust His Administrative Remedies Under the PRLA**

After careful consideration, the Court answers this question in the affirmative for the following reasons.

The analysis of whether Plaintiff exhausted his administrative remedies in this case is guided by the Washington County Correctional Facility's Grievance Procedures as contained in the facility's handbook.  (Dkt. No. 37, Attach. 1, at 4-5.)  Pursuant to these procedures, "[a] grievance is a formal, written complaint concerning written or unwritten policies, procedures,

---

[3]    The Court notes that this finding is not inconsistent with Defendants' submission and use of the Section 50-h examination transcript with their motion for summary judgment, because evidence considered on a motion for summary judgment need not be in an admissible form, so long as it "can[] be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2). *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, 17-CV-0598, 2021 WL 1792394, at *30 (N.D.N.Y. May 5, 2021) (Sannes, J.) (noting that "'material relied on at summary judgment need not be admissible in the form presented to the district court.  Rather, so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment.'") (quoting *Smith v. City of New York*, 697 F. App'x 88, 89 [2d Cir. 2017]).  Because this evidence could be presented at trial in the form of testimony by Plaintiff, the Court could appropriately consider that evidence when deciding Defendants' summary judgment motion.  However, that fact does not guarantee that the transcript itself is admissible under the Federal Rules of Evidence.

rules, practices, programs or actions or inactions of any person within the facility." (*Id.*)

Inmates are further instructed as follows:

> If you have a complaint, use the following process:
>
> 1.      While you are not required as a condition to receive a grievance form, you are encouraged to attempt to get it resolved, informally, with the housing unit officer.
> 2.       If for some reason you and the officer are unable to reach a resolution, you may request a grievance form and you shall receive it within twenty-four (24) hours of your request.
> 3.      An inmate must file a grievance within five (5) days of the date of the alleged act or occurrence giving rise to the grievance.
> 4.      You may request and receive assistance in completing the form.
> 5.      Your grievance will be investigated, and you will receive written determination from the grievance coordinator within five (5) business days.
> 6.      If you are not satisfied with the grievance coordinator's decision, you may appeal the decision to the Jail Administrator within two (2) business days.
> 7.      You will receive a response from the Jail Administrator within five (5) business days.
> 8.      If you are not satisfied with the decision, you may then appeal such decision to the State Commission of Corrections within three (3) business days.
> 9.      You will receive response from the Commission within forty-five (45) business days of their receipt of the grievance.
> 10.     If an Immigration/US Marshall inmate files a grievance about officer misconduct, a copy will be forwarded to the Jail Administrator, and also to the Department of Homeland Security.

(Dkt. No. 37, Attach. 1, at 4-5.)

At the exhaustion hearing, Defendant VanArnum and Officer Minor both testified that a grievance must be made on the official form from the New York State Commission of Correction, that a grievance will not be accepted and filed unless it is on the official form, and that, if an inmate were to attempt to give them a grievance written on anything other than the

official form, their practice would be to have that document returned to the inmate with instructions that they need to use the official form.  Defendant VanArnum testified that this is simply standard practice for the facility and that he tells other corrections personnel to treat any submission that is not on the official form in the above manner.  Defendant VanArnum and Officer Miner testified that they were the only two grievance officers at the facility at the relevant time and thus, if Plaintiff had filed a grievance, it would have had to go to either of them; however, both testified that Plaintiff had not filed any grievances in his time at Washington County Correctional Facility.  Indeed, Defendant VanArnum and Captain McKenna both testified that a review of the grievance records for the facility did not show any grievances whatsoever from Plaintiff.  Defendant VanArnum further testified that, had Plaintiff given him a grievance in which he was named as one of the corrections personnel alleged to have committed an improper action, Defendant VanArnum would have referred it to Officer Miner, and that he has never investigated a grievance in which he was named.  Finally, Defendant VanArnum testified that, in his time as a grievance officer, he has not known of any grievances that were submitted by an inmate but not filed.

This testimony was consistent with the fact that documents admitted into evidence show that, between November 10 and 9:20 a.m. on November 13, 2017, Plaintiff was on constant watch, after which he was placed on checks every 15 minutes from the morning of November 13 to November 15, 2017, and the logs for those checks do not indicate that Plaintiff ever requested a writing tool, a grievance form, or any paper from corrections officers during that time. (Def.'s Hr'g Ex. 7.)  In fact, the check logs note that, as of 2:50 p.m. on November 13, 2017, at which time Plaintiff was transferred to a different cell, he was under a "no sharps" order, which Captain

McKenna testified to mean that Plaintiff was barred from having any pens or writing instruments; this "no sharps" order remained in effect at least until November 15, 2017.  (*Id*.)

The Court finds that the above evidence is sufficient to meet Defendants' burden of showing that Plaintiff failed to file a grievance within the five days required by the Washington County Correctional Facility grievance procedures (or at any time while he was being held at Washington County Correctional Facility) and thus has failed to exhaust his administrative remedies.  Testimony from multiple sources indicates that there is no record or recollection of Plaintiff filing a grievance, and both the testimony of Captain McKenna and the check logs substantiate a finding that, during the relevant time, Plaintiff required permission to have any writing instrument and there is no indication that he requested either a writing instrument or a grievance form from any of the corrections officers who were monitoring him.  Plaintiff has not offered any admissible evidence to counter Defendants' showing.

Having found that Defendants have shown that Plaintiff failed to file a grievance, and therefore has failed to exhaust his administrative remedies, the Court must next consider whether the grievance procedure was available to Plaintiff.  The Court finds that it was for three reasons.  First, there is no evidence that "officers [at Washington County Correctional Facility were] unable or consistently unwilling to provide any relief to aggrieved inmates."  *Ross*, 136 S. Ct. at 1859.  To the contrary, as discussed above, Defendant VanArnum testified that, during his tenure as a grievance officer, out of the "hundreds" of inmate grievances he handled, he has never failed to provide a decision on a grievance that was filed with him.  There is no evidence that Defendant VanArnum or any other corrections officer inappropriately denied or otherwise rejected grievances as a matter of course regardless of their merits; rather, Defendant VanArnum testified that grievances filed on the official form are investigated, and Captain McKenna

19

testified that, when reviewing the grievance officer's decision on the grievance, he will either acquire more information or accept the investigation that has already been conducted when making a decision on a grievance.

Second, the Washington County Correctional Facility grievance procedure is not "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. In his report-recommendation regarding Defendants' motion for summary judgment, Magistrate Judge Stewart expressed concern that "process for addressing the failure to receive a response to the grievance [Plaintiff] claims he filed may have been so opaque as to render the grievance process functionally unavailable to Plaintiff" based on Defendants' argument that Plaintiff had failed to appeal the lack of an answer to the New York State Commission of Correction and the fact that the Washington County Correctional Facility grievance policy does not indicate what the procedure is for appealing an unanswered grievance. (Dkt. No. 39, at 7-8 [Report-Recommendation filed Feb. 13, 2020].) However, that concern was expressed in the context of considering whether there was a question of material fact as to whether Plaintiff had indeed filed a grievance. As discussed above, Defendants have produced sufficient evidence to meet their burden to show that Plaintiff failed to file a grievance within the allotted time period, and Plaintiff has offered no evidence to rebut Defendants' showing.

Notably, *Berman v. Durkin*, 13-CV-0136, 2017 WL 1215814 (N.D.N.Y. Mar. 10, 2017) (Stewart, M.J.), and *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016) (on which *Berman* relies), both involved factual situations in which the plaintiffs provided evidence that they had attempted to file grievances, but those grievances were never actually filed or processed by corrections personnel. *Williams*, 829 F.3d at 120-23 (involving a situation in which plaintiff alleged that he delivered his grievance to a corrections officer to be forwarded to the grievance office, but it was

not clear that grievance was ever filed with the grievance office); *Berman*, 2017 WL 1215814, at *7-8 (involving a situation in which plaintiff sent letters to the Inmate Grievance Program [the initial level for the grievance process under the New York State Department of Corrections and Community Supervision procedures] complaining of his assaults, but those letters were not processed or filed as grievances). By contrast, in this case, Plaintiff has failed to adduce admissible evidence to establish that he even attempted to file a grievance on the official form (or even attempted to file a grievance not on the official form during the relevant five-day time period) as required by the Washington County Correctional Facility's grievance procedure. Finally, the Court notes that whether a procedure exists for appealing a submitted but unfiled or unprocessed grievance is immaterial in this case; because Plaintiff had not fulfilled the most basic preliminary step in attempting to exhaust his administrative remedies (i.e., submitting a grievance), the need to appeal an unprocessed grievance never became a concern.

Third, there is no evidence that Plaintiff was thwarted from "taking advantage of a grievance process through machination, misrepresentation, or intimidation" by corrections officers or prison officials. *Ross*, 136 S. Ct. at 1860. Although Plaintiff argued in his opposition to Defendants' motion for summary judgment that Defendant VanArnum had thwarted his grievance, the credible evidence presented at the hearing indicated that (a) Defendant VanArnum would have, as a matter of practice, referred any grievances against him to Office Miner (as the only other grievance clerk at the relevant time), and (b) Defendant VanArnum had no knowledge of the investigation that Captain McKenna conducted into Plaintiff's allegations, he never saw the letter containing those allegations, and Captain McKenna did not even tell him that he was named in the letter. There is no evidence that any corrections officer or corrections official misrepresented the grievance process or the circumstances to Plaintiff, or that they intimidated

him to prevent him from filing a grievance.  There is also no evidence to support any argument that Defendants or others lost or destroyed Plaintiff's alleged grievance, given that, as already discussed, Defendants have provided sufficient evidence to prove that Plaintiff failed to even attempt to file a grievance.  Additionally, as to the evidence that Plaintiff was confined under both restrictive conditions (with limited or no possessions permitted) and a "no sharps" order during the time in which he would have had to file his grievance according to the timeline in the grievance procedure, Captain McKenna testified that, had Plaintiff requested to submit a grievance under these conditions, that request would have been discussed with Behavioral Health, and, with Behavioral Health's approval, Plaintiff would have been cleared to be given a grievance form and a pen or pencil for the purposes of completing a grievance.  However, there is no evidence that Plaintiff made any such request.  There is therefore no evidence that Plaintiff's restrictive confinement was an attempt to thwart his ability to file a grievance within the allotted five-day period.

For all of the above reasons, the Court finds that Defendants have shown that Plaintiff failed to exhaust his available administrative remedies under the PRLA.

### C.      Whether the Court Should Dismiss Plaintiff's Complaint for Lack of Prosecution

As discussed above in Part III.B. of this Decision and Order, the Court finds that Plaintiff's claims must be dismissed due to Defendants' proof that Plaintiff failed to file a grievance and exhaust his administrative remedies.  Because the Court has already found that Plaintiff is barred from pursuing his claims pursuant to the PRLA, it need not decide Defendants' motion to dismiss for lack of prosecution.  As a result, although the motion appears to have at least some merit, the Court will deny it without prejudice as moot.  *See Forsythe v. CIGNA Healthcare*, 09-CV-7633, 2010 WL 3767127, at *3 (S.D.N.Y. Aug. 30, 2010) (denying

motion to compel discovery as moot where the Court dismissed the complaint), report-recommendation adopted by 2010 WL 3767125 (S.D.N.Y. Sept. 27, 2010); *Amaker v. Kelley*, 01-CV-0877, 2009 WL 385413, at \*20 (N.D.N.Y. Feb. 9, 2009) (Peebles, M.J., report-recommendation adopted by Scullin, J.) (denying motion to dismiss as moot where the Court had already found that the plaintiff's complaint should be dismissed based on the granting of a concurrent summary judgment motion).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** **in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PRLA; and it is further

**ORDERED** that Plaintiff's motion to admit the transcript of the Section 50-h examination (Dkt. No. 78) is **DENIED**; and it is further

**ORDERED** that Defendants' motion to dismiss for lack of prosecution (Dkt. No. 77) is **DENIED** **without prejudice** as moot; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

Dated: September 10, 2021
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge